IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HERMAN CROMARTIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-106-WKW |
| | ) | [WO] |
| CENTRAL ALABAMA FOOD | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a discriminatory-discharge suit brought under Title VII of the Civil

Rights Act of 1964.  42 U.S.C. § 2000e-2(a)(1).  Plaintiff Herman Cromartie alleges

that he was fired from his employment with Defendant Central Alabama Food

Services (CAFS) because he is a man.  (Doc. # 1.)  CAFS says he was fired because

he was credibly accused of sexually harassing his female coworker.  Pending before

the court is CAFS's motion for summary judgment.  (Doc. # 20.)  CAFS argues that

Cromartie fails to create a genuine dispute of fact as to discriminatory intent.  For

the following reasons, the motion will be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal-question

jurisdiction).  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. BACKGROUND

Herman Cromartie was hired by CAFS in early 2020 as an Assistant Manager. (Doc. # 23 at 1.) At his orientation, he was given CAFS's Anti-Harassment Policy, (Doc. # 22-13 at 11), and he understood that an employee CAFS found to have engaged in harassment could be subject to termination. Shortly after being hired, he was promoted to Assistant Project Manager by CAFS's Project Manager, Ronnie McDaniel.

Almost a year later, on January 29, 2021, Yolanda Young, one of Cromartie's subordinate coworkers, informed McDaniel that Cromartie had been sexually harassing her. That same day, Young submitted a written complaint to McDaniel outlining each instance in which she alleges to have been sexually harassed by Cromartie. (Doc. # 22-13 at 19–21.) Young wrote that Cromartie had been sexually harassing her for "about two months"; that he would go into her office and touch her around the waist; that he would tell her he was mad at her because she would not

hug him; that he told her that he likes her, to which she replied that she had a boyfriend and he replied back that she was "special to him"; that he told her that he "will give [her] something big"; that he said, "let me see your butt"; and that he would call her on her personal phone and ask her why she did not give him "a hug." (Doc. # 22-13 at 19–21.)

Upon receiving Young's complaint, McDaniel notified company President Fred Anderson and began investigating the alleged harassment. (Doc. # 22-13 at 4.) At Anderson's direction, McDaniel suspended Cromartie pending his investigation. (*Id.* at 4–5.) When McDaniel notified Cromartie of his suspension, McDaniel said, "I'm stuck between a rock and a hard place, any time a sexual harassment come up, we have to do something and nine out of ten times we take the woman's side . . . ." (Doc. # 22-1 at 27.) McDaniel then conducted his investigation. He interviewed Young and several other female employees. He also received a written report from another female employee who Young had initially complained to. But McDaniel did not interview Cromartie in his investigation. At the investigation's conclusion, McDaniel presented Anderson with the written statements and summaries of the oral statements that he received.

After receiving the results of McDaniel's investigation, Anderson made the decision to fire Cromartie. Anderson instructed McDaniel to terminate Cromartie, which McDaniel did on February 3, 2021. Anderson says Cromartie's gender had

4

nothing to do with his decision to terminate Cromartie's employment. Rather, he credited Young's allegations and was concerned about CAFS's obligation to provide a workplace free from harassment as well as retaliation for complaining about harassment.

Thereafter, Cromartie filed this lawsuit.

## IV.  DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits an employer from firing an employee because of the employee's sex.  42 U.S.C. § 2000e-2(a)(1).  In this discriminatory-discharge action, Cromartie alleges his former employer, CAFS, fired him because he is a man.  A discriminatory-discharge (or wrongful-termination) claim under Title VII has two elements: (1) a discharge/termination that was (2) caused by discrimination (that is, discriminatory intent).[1]  *See Blash v. City of Hawkinsville,* 856 F. App'x 259, 265 (11th Cir. 2021). Here, the first element is satisfied because Cromartie was fired.  The question then,

---

[1] Discriminatory-discharge claims have also been framed in three elements.  For example, the Eleventh Circuit has stated, "in order to prove intentional discrimination under this section, a plaintiff must establish (1) the employer's discriminatory animus towards the employee based on the employee's protected characteristic; (2) a discharge or other significant change in the terms or conditions of employment; and (3) a causal link between the two." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999).  But an adverse action caused by discriminatory animus has also been referred to as "discriminatory intent."  The bottom line is that there must be a discharge causally linked to discrimination.

like in many discriminatory adverse-employment-action claims, is whether a reasonable juror could find that discrimination was the cause of the termination, *i.e.*, causation/discriminatory intent.   For the following reasons, Cromartie fails to establish that a reasonable juror could determine that his sex caused his termination. Put differently, regardless of the causation standard or evidentiary framework, and while construing the totality of the evidence in the light most favorable to Cromartie, "the record does not permit a reasonable inference that the termination decision was motivated by bias against [his] sex." *Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 489 (11th Cir. 2020).

Title VII discriminatory-discharge claims have two alternative theories of causation: single-motive and mixed-motive causation.   *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 n.4 (11th Cir. 2016).   Importantly, though often called single or mixed-motive "claims," the Eleventh Circuit has held that these two theories are *not* different causes of action or claims that have to be plead distinctly. Rather, they are "alternative causation standards for proving discrimination." *Id.*; *Cf. Coe v. N. Pipe Prod., Inc.,* 589 F. Supp. 2d 1055, 1097 (N.D. Iowa 2008) (arguing that the statutory texts of 42 U.S.C. § 2000e-2(a) and § 2000e-2(m) establishes that mixed and single motive claims are distinct actions, and it is the plaintiff's prerogative to plead one or both).   The single-motive theory is based on the idea that discrimination was the *only* reason for the termination, whereas the mixed-motive

theory allows for liability to attach where discrimination was a motivating factor in the termination but the termination could have happened because of other, permissible reasons.

Single-motive causation requires a plaintiff to prove that bias against a protected class was "the true reason for the adverse employment action." *Breeding v. Integrated Behav. Health Inc.*, 2023 WL 3735341, at *2 (11th Cir. May 31, 2023) (quoting *Quigg*, 814 F.3d at 1235); *see* 42 U.S.C. § 2000e-2(a). Put differently, single-motive causation is "but for" causation. That is, but-for discrimination, the plaintiff would not have been fired. Mixed-motive causation requires less. Mixed-motive causation requires a plaintiff to prove that bias against a protected class "was a motivating factor for an adverse employment action, even though other [permissible] factors also motivated the action." *Id.* (cleaned up); *see* 42 U.S.C. § 2000e-2(m).[2] The "relevant difference between the two standards" is

---

[2] The mixed-motives theory—which applies to cases where multiple motives lie behind an adverse employment action—was first announced in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion), and was subsequently codified by the Civil Rights Act of 1991 at 42 U.S.C. § 2000e–2(m). *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013) (describing § 2000e–2(m) as "a lessened causation standard" for establishing discrimination because of sex); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93–95 (2003). Under the statute, a plaintiff may establish an "unlawful employment practice" by demonstrating that sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). Once a plaintiff shows the existence of an impermissible motivating factor, "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Desert Palace*, 539 U.S. at 94; *see* 42 U.S.C. § 2000e–5(g)(2)(B) (If "a respondent demonstrates that [it] would have taken the same

7

that single-motive, but-for, causation ultimately fails if an employer would have made the same decision in the absence of discrimination, while a mixed-motive claim can succeed based "solely on the employer's reliance on a forbidden consideration," even if the employer would have fired the employer regardless of the forbidden consideration. *Hickman v. Fla. Dep't of Corr.*, 2022 WL 3372003, at *4 (11th Cir. Aug. 16, 2022). The real-world upshot of this difference is in the scope of remedies. Single-motive-but-for causation is all or nothing. If single-motive causation is proved, plaintiffs can access the full gambit of remedies like backpay and reinstatement. Meanwhile, mixed-motive causation is subject to the same-decision defense that limits remedies to declaratory relief, certain types of injunctive relief, and attorney's fees and costs. *See* 42 U.S.C. § 2000e-5(g)(2)(B) (authorizing the same-decision defense).

Of late, the Eleventh Circuit has dealt with many cases that were dismissed at summary judgment because the arguments revolved around the the more rigorous single-motive causation theory and then on appeal the plaintiffs argued for the

---

action in the absence of the impermissible motivating factor, the court—(i) may grant declaratory relief, injunctive relief . . . and attorney's fees and costs . . . and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A)."). That same-decision affirmative defense is not explicitly available under the "single-motive" but-for causation standard, but that "defense" is wrapped into the but-for causation standard itself.

application of the less stringent mixed-motive causation theory.[3]  *See Steffens v. Nocco,* 2023 WL 2591414, at *1 (11th Cir. Mar. 22, 2023) (per curiam);  *Fonte v. Lee Mem'l Health Sys.*, 2021 WL 5368096, at *4 (11th Cir. Nov. 18, 2021) (per curiam); *Stevenson v. City of Sunrise*, 2021 WL 4806722, at *7 (11th Cir. Oct. 15, 2021) (per curiam); *Williams*, 834 F. App'x at 489; *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 131 (11th Cir. 2019) (per curiam).  Given that many cases hinge on which causation standard to apply at summary judgment, the first question is determining whether Cromartie invokes the mixed-motive theory, the single-motive theory, or both.

Based on the above precedent, the court finds that Cromartie brings his discriminatory-discharge claim *only* under a single-motive theory.  His complaint does not specify whether the claim is based on single causation, mixed causation, or both.  However, his briefing invokes the single-motive statute, 42 U.S.C. § 2000e-(2)(a), and he references pretext, burden-shifting, and legitimate reasons, which are touchstones of single-motive cases.  (Doc. # 23 at 14.)  On the other hand, his briefing does not mention, even in passing, "mixed motives" or "motivating factors."  Accordingly, based on Eleventh Circuit precedent requiring at least more than a

---

[3]  *But see* Eleventh Circuit Civil Pattern Jury Instructions No. 4.5 commt. II.B (2022) ("Pattern Instruction 4.5 applies the 'motivating factor' standard to all Title VII disparate treatment claims, not just 'mixed motive' claims . . .   The Committee believes that, as a practical matter, many cases that are submitted to a jury could be construed as 'mixed motive' cases, which is why the Committee recommends 'motivating factor' language.").

"passing reference" to the mixed-motive theory, Cromartie is stuck with the more burdensome single-motive causation standard. *Smith*, 791 F. App'x at 131 (citing *Keaton v. Cobb Cnty., GA*, 2009 WL 212097, at *10 (11th Cir. Jan. 30, 2009)).

However, out of an abundance of caution, the court will analyze Cromartie's claim under the less burdensome "motivating factor" causation standard—and conclude that Cromartie fails to create a triable issue even under that lower standard. The court finds using the "motivating factor" standard appropriate for three reasons: (1) Cromartie arguably intended to rely on both mixed and single-motive causation; (2) the Eleventh Circuit has repeatedly used motivating-factor causation in single-motive discrimination cases under a belt-and-suspenders approach, *see Williams*, 834 F. App'x at 489 (holding the case was single-motive and analyzing under motivating-factor causation anyway); and (3) while nonbinding, the Eleventh Circuit Civil Pattern Jury Instructions rightly indicate that, as a practical matter, discrimination cases can almost always be construed as mixed-motive cases. *See* Eleventh Circuit Civil Pattern Jury Instructions No. 4.5 commt. II.B (2022) ("Pattern Instruction 4.5 applies the 'motivating factor' standard to all Title VII disparate treatment claims, not just 'mixed motive' claims."). *See also E.E.O.C. v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018) (intertwining the standards for mixed and single motive discrimination claims).

Accordingly, out of an abundance of caution and for completeness purposes, the court will use the mixed-motive causation framework articulated by 42 U.S.C. § 2000e-2(m) and analyze "whether unlawful discriminatory animus motivated the decision." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (cleaned up). Of course, if a plaintiff fails to satisfy this lesser mixed-motive causation standard, he necessarily fails but-for causation.

Having articulated the applicable motivating-factor standard of causation, the next issue is evaluating whether the evidence is sufficient to create a triable issue as to that standard. This process is more complicated than it sounds. That is partly because causation based on discriminatory intent is an abstract concept that requires third parties to look at a totality of endlessly variable workplace evidence to determine "reality as it exists [inside] of [a] decision maker's head." *Alvarez*, 610 F.3d at 1264. Discerning a discriminatory subjective intent, especially when the decisionmaker denies discrimination and where discrimination can be easily hidden, is not precisely measurable. But over the years, courts have created many different ways to consider and vet evidence to aid in the process of filtering out unmeritorious allegations of discrimination. Courts have compartmentalized *types* of evidence (direct and circumstantial), created frameworks from which to evaluate this evidence, articulated metaphors for when evidence establishes discrimination, and generally tried to ascribe objective methodologies to employ in the effort to make a

11

judgment call on somebody's subjective intent.  The following is an outline of those evidentiary principles.

To begin, a genuine dispute of material fact as to causation/discriminatory intent can be established by direct evidence, circumstantial evidence, or both. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).  Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact in issue *without inference or presumption.*"  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (cleaned up) (emphasis added).  "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible," factor constitute direct evidence of discrimination. *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (citation and quotation marks omitted).  If there is direct evidence of discrimination, there is almost necessarily a genuine dispute of material fact as to discriminatory intent.  *Horne v. Turner Const. Co.*, 136 F. App'x 289, 292 (11th Cir. 2005) ("Direct evidence of discrimination" is sufficient "to withstand a motion for summary judgment.").

In the absence of, or in supplement to, direct evidence, plaintiffs can use circumstantial evidence to establish a triable issue on discriminatory intent. *Jenkins*, 26 F.4th at 1249.  Circumstantial evidence is evidence that suggests but does not prove a discriminatory motive.  *See Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997).  Circumstantial evidence comes in

many varying forms. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). It can be statements, statistics, suspicious timing, ambiguous justifications, inferences drawn from comparisons to the treatment of other employees, *etc.* *Id.* Circumstantial evidence is the touchstone of employment-discrimination claims given that only the most incompetent discriminators directly admit to their wrongdoing. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (commenting on the "fabled employer who admits to firing an employee because of [a protected class]"). But "no matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith*, 644 F.3d at 1328.

When operating in the world of circumstantial evidence, there are several well-known frameworks plaintiffs can employ to show discriminatory intent: the

cat's paw causation theory,[4] the convincing-mosaic metaphor,[5] and the *McDonnell Douglas* similarly situated comparator framework.[6]  *Id.* (holding that a plaintiff can

---

[4]  Colloquially, "cat's paw" is used to describe a person who is used by another to carry out an unpleasant task.  Legally, the "cat's paw" theory allows for a finding of discriminatory intent where the decisionmaker was not himself acting with discriminatory animus, but rather the decisionmaker was directly caused to make the decision by a non-decisionmaker's recommendation that itself *was* motivated by discriminatory animus.  Put differently, the cat's paw theory concerns "conditions under which a lower-level employee's animus can be imputed to a decisionmaker."  *Ziyadat v. Diamondrock Hosp. Co.*, 3 F. 4th 1291, 1298 (11th Cir. 2021).  While the cat's paw theory is really a once-removed theory of proximate causation, it is included here because too often the analysis of circumstantial evidence overlooks the fact that circumstantial evidence of discriminatory animus can attach to a non-decisionmaker recommender and then, in certain circumstances, the non-decisionmaker's animus can be imputed to the ultimate decisionmaker based on that decisionmaker's blind (or unverified) acceptance of the recommendation.  *See Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008).  Meaning that, when considering the totality of evidence in an intentional discrimination case, the evidence should not necessarily be siloed to the decisionmaker if in fact the decisionmaker was but a mere conduit of another's discriminatory animus.  "Cat's paw" is one way to describe such a situation.  "Puppet" is another.

[5]  A plaintiff can survive summary judgment on a discriminatory-discharge claim under Title VII by presenting "a convincing mosaic of circumstantial evidence" that supports a reasonable inference that the employer discriminated against him."  *Smith*, 644 F.3d at 1328.  A "convincing mosaic" may exist where evidence shows, among other things, "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual."  *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks and ellipsis omitted) (*Lewis II*).

[6]  Under the *McDonnell Douglas* burden-shifting framework, the plaintiff bears the burden of establishing a prima facie case of race discrimination by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated "similarly situated" employees outside his class more favorably.  *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) (*Lewis I*).  To establish the fourth prong, the plaintiff must present evidence of a comparator— someone who is "similarly situated in all material respects."  *Id.* at 1224.  Although what constitutes a "material" similarity or difference will differ from case to case, ordinarily a similarly situated comparator and the plaintiff will: have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history.  *Id.* at 1227–28.  Additionally, while the second-and-third "pretext" steps

defeat a motion for summary judgment via the *McDonnell Douglas* framework or by presenting a "convincing mosaic" of circumstantial evidence).   While courts typically frame *McDonnell Douglas* and the convincing mosaic idea as "single motive" frameworks, that is imprecise.   The *burden-shifting* of *McDonnell Douglas* is inappropriate for mixed-motive causation; however, *McDonnell Douglas*'s prima facie comparator case can establish motivating-factor causation.   That is, *McDonnell Douglas* does not have a monopoly on comparator evidence.   Similarly, the evidentiary tiles and "other bits and pieces" of evidence that form the convincing mosaic metaphor also equally apply to establishing motivating-factor causation.   *Id.*

   In any event, more often than not, litigants and courts trod the comparator path laid out in *McDonnell Douglas* and its progeny.   But the *McDonnell Douglas* framework is not the "*sine qua non* . . . in an employment discrimination case," and plaintiffs are not pigeon-holed to one or another rigid evidentiary framework.   *Smith*, 644 F.3d at 1328; *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) ("The *McDonnell Douglas-Burdine* proof structure was never intended

---

of the *McDonnell Douglas* burden-shifting framework are inappropriate for a mixed-motive theory of causation, *see Quigg*, 814 F.3d at 1237–40 (explaining that a framework predicated on proof of a single "true reason" is not congruent with a mixed-motive scenario), the *similarly-situated-comparator analysis* outlined in *McDonnell Douglas's* prima facie case is certainly relevant to both mixed and single motive contexts because comparator evidence is simply one way of showing discrimination under any causation standard, *Lewis I*, 918 F.3d at 1223 (noting that discrimination is a "comparative concept" by "its very nature").

to be rigid, mechanized, or ritualistic." (internal citations omitted)).  Rather, courts look at the totality of the evidence in each fact-specific case.  *Rioux v. City of Atlanta,* 520 F.3d 1269, 1281 (11th Cir. 2008) (holding that the plaintiff established a prima facie case of racial discrimination when he did not present evidence of a comparator but presented other circumstantial evidence that was sufficient); *Alvarez*, 610 F.3d at 1264 (holding that the evidence required to prove a case of discrimination under Title VII is "flexible and depend[s] on the particular situation").

Regardless of the evidence a plaintiff uses, (indeed, regardless of whether the plaintiff even uses a previously articulated evidentiary framework), the bottom line is that there must be sufficient evidence that "creates a triable issue concerning the employer's discriminatory intent."[7]  *Smith*, 644 F.3d at 1328.  And, as discussed

---

[7]  The surplusage of "tests" (delineations between direct and circumstantial frameworks, mosaics and shifting burdens, similarly and non-similarly situated comparators, single versus mixed motives, elements versus tests versus methods versus evidentiary frameworks) has led courts and litigants down a muddled path of disparate approaches, searching for elusive mosaics and smoking guns.  As the Seventh Circuit has noted, the overreliance on these rigid "tests" and shoehorned labels distracts from the sole question that matters to receive damages: "Whether a reasonable juror could conclude that [the plaintiff] would have kept his job if he had a different [sex,] and everything else had remained the same."  *Ortiz*, 834 F.3d at 765 (rejecting the compartmentalization of "direct" and "indirect" evidence, reiterating that evidentiary frameworks are not necessary "elements" or "legal requirements" of a discrimination claim but ways to show discrimination, reiterating that a "convincing mosaic" is not a legal test but a metaphor and it is *not* a metaphor bound to "circumstantial" evidence, and refocusing attention on the sole legal standard, that is, "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [protected status] caused the discharge or other adverse employment action").  Time and again the arguments ferret away at the boxes and labels and methodologies into which lawyers like to shove evidence; all at the cost of considering the totality of the evidence and whether a reasonable juror—who is unbound by certain judicially-created terminologies like "convincing mosaic"—could determine that somebody was fired because of their race, sex, age, *etc*.  It is time to refocus the issue.  *See* Eleventh Circuit Civil Pattern Jury Instructions No. 4.5

16

above, a triable issue concerning the employer's discriminatory intent exists, at the lowest level, if there is a genuine dispute as to whether unlawful discriminatory animus was *a* motivating factor for the termination. *Quigg*, 814 F.3d at 1239–40 ("[T]he crux of the analysis at the summary judgment stage is whether the plaintiff has offered sufficient evidence to establish a genuine issue of discrimination.").

Accordingly, at this stage (and where Cromartie could have moved under both single and mixed-motive theories of causation), the "sole concern" is, "[r]egardless of the theory of discrimination," whether there is sufficient evidence for a reasonable juror to determine that "unlawful discriminatory animus motivated" his termination. *Williams*, 834 F. App'x at 488. If there is not, then Cromartie's discriminatory-discharge claim fails under any theory or framework. *Id.* If there is, then summary judgment is inappropriate. For the following reasons, there is insufficient evidence to permit a reasonable inference that CAFS's decision to terminate Cromartie's employment was motivated by his sex under mixed-motive causation, let alone that his sex was the only reason for that decision under single-motive causation. *See Quigg*, 814 F.3d at 1235.

---

commt. II (2022) (outlining the two jury questions of a discriminatory-discharge claim and noting that the Eleventh Circuit has previously stated that "it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis" (quoting *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999))).

Cromartie argues that there is sufficient evidence for a reasonable juror to return a verdict in his favor as to causation/discriminatory intent.  In his words, the "gravamen" of that evidence can be summarized in one sentence:  McDaniel, the man who investigated the allegations that Cromartie was sexually harassing a female coworker, told Cromartie, "I'm stuck between a rock and a hard place, any time a sexual harassment come up, we have to do something and nine out of ten times we take the woman's side . . ."  (Doc. # 22-1 at 27.)

Cromartie asserts that McDaniel's "nine-out-of-ten-times-we-take-the-woman's-side" statement constitutes *direct* evidence of discrimination.  If it is direct evidence, summary judgment should be denied.  But it is not direct evidence.  Direct evidence is "evidence which, if believed, would prove the existence of a fact in issue *without inference or presumption.*"  *Earley*, 907 F.2d at 1081 (emphasis added).  McDaniel's statement does not directly evidence discrimination because it requires massive inferences to get to that point.  One must infer that nine-out-of-ten times the company is taking the woman's side *because* she is a woman and *not* because nine-out-of-ten times the woman was ultimately more credible, or because of any other reason that is not gender based.   Moreover, one would have to assume that this statement is a pronouncement of an unwritten *de facto* policy to fire men that are accused of harassment based on the accusation alone and not on the company's belief that the accusation is credible.  And one would have to assume that this policy *only*

18

applies to men accused by women, rather than applying to all people who are accused of harassment. Finally, one would have to overlook the plain language of McDaniel's off-hand statement that implies that 10% of accused men are not fired, meaning that not all accused men are fired but rather only certain accused men. Accordingly, McDaniel's statement—which he denies saying but is assumed true— is not direct evidence of discriminatory intent. So, Cromartie's case is built on circumstantial evidence. And McDaniel's statement is, of course, valid circumstantial evidence of discriminatory intent.

The totality of the circumstantial evidence of discriminatory intent, in the light most favorable to Cromartie, is the following: (1) McDaniel's nine-out-of-ten-times statement, and (2) Cromartie's belief that the accusations were not properly investigated because the investigation did not reveal that Cromartie's accuser gave him a Christmas present. That is all the evidence Cromartie cites. There is no statistical evidence that CAFS only terminated men for sexual harassment. There is no comparator evidence to show that accused men are treated differently from accused women. That is, there is no evidence that a female accused of sexual harassment was not fired or was not put through the same investigation as men accused of sexual harassment. *Lewis v. City of Union City, Ga*, 918 F.3d 1213, 1223 (11th Cir. 2019) ("By its very nature [] discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are

being treated 'differently.'").  Therefore, Cromartie cannot make out a comparator case under *McDonnell Douglas*.

Additionally, there is no written policy or statement from the ultimate decisionmaker suggesting that sexual harassment complaints from men are treated differently than from women.  *N.L.R.B. v. Collier*, 553 F.2d 425, 428 (5th Cir. 1977) (emphasis added) ("Discrimination consists of *treating like cases differently*.").  CAFS never made ambiguous, contradictory, or inconsistent statements as to the reason for Cromartie's termination.  The timing of the termination was not suspicious—it came after an investigation into the harassment allegations.  Other than Cromartie's denial, there is no evidence that was within CAFS's knowledge to doubt the veracity of Young's accusations, such as statements from anybody indicating that Young was lying.  Indeed, the only circumstantial evidence Cromartie says shows that he was not harassing Young was that Young gave him a bottle of liquor for Christmas.  But a Christmas gift, which was unknown to CAFS, is insufficient to call into doubt that CAFS terminated Cromartie because it believed he was credibly accused of sexual harassment.  Moreover, the accusations were investigated, and McDaniel interviewed several employees in that investigation.  Additionally, McDaniel—the man who made the "nine-out-of-ten-times" statement—did not have the authority to terminate Cromartie.  The ultimate decisionmaker was Anderson, who made no gender-based statements whatsoever.

At bottom, Cromartie presents insufficient evidence to enable a reasonable juror to determine that his termination was motivated by discriminatory animus against him rather than the fact that he was an employee credibly accused of sexual harassment.  Cromartie had no issues with his employment before he was accused of sexual harassment.  Pre-accusation, he had no reason to think he was being treated differently because he was a man.  Then, he was accused of sexual harassment, and CAFS was faced with a he-said-she-said situation.  After an investigation, CAFS believed she was more credible.  Rather than keeping a credibly accused sexually harasser on the payroll, CAFS fired Cromartie.  Cromartie may in fact have done nothing wrong; he may have been falsely accused.  But the in-fact truth of the accusations is irrelevant.  What is relevant is whether Cromartie's status as a man subjectively motivated the termination.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that the causation-intent inquiry is limited to whether the decisionmaker *believed* the employee was guilty of misconduct and if so, whether that was reason behind discharge; that the employee did not actually engage in misconduct is irrelevant).  If Cromartie presented evidence that a woman was credibly accused of harassment and that she was retained despite CAFS's belief that she was a harasser, then perhaps he could establish that his gender motivated his termination.  But Cromartie presents no such evidence, and McDaniel's off-hand statement alone is not enough to cover the deficit.

21

Employers have no legal duty to prove that an accused harasser is factually innocent. It is well within an employer's prerogative to terminate an employee because the employer believes, mistakenly or accurately, that the employee sexually harassed coworkers. When considering the totality of the evidence in the light most favorable to Cromartie, that is what happened here. *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("[A]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176–77 (11th Cir. 2000) ("[I]n carrying out its business and in making business decisions . . . , the employer can lawfully act on a level of certainty that might not be enough in a court of law."). Cromartie fails to create a genuine dispute of material fact as to whether his sex motivated his termination. Therefore, summary judgment will be entered in favor of CAFS.

## V. CONCLUSION

Accordingly, it is ORDERED that Central Alabama Food Service's motion for summary judgment (Doc. # 20) is GRANTED. A final judgment will be entered separately.

DONE this 11th day of August, 2023.

/s/ W. Keith Watkins
_____
UNITED STATES DISTRICT JUDGE
